OPINION
{¶ 1} Defendants-appellants/cross-appellees, RSV, Inc., et al., appeal a decision of the Jefferson County Common Pleas Court finding them in contempt and in violation of Ohio's environmental laws. Plaintiff-appellee/cross-appellant, State of Ohio, ex rel. Jim Petro, Attorney General of Ohio, appeals the same decision arguing that the trial court failed to impose adequate injunctive relief.
 {¶ 2} Defendant-appellant/cross-appellee, RSV, Inc. (RSV), operates a construction and demolition debris landfill facility known as the Pine Hollow Construction Demolition Debris Facility (Pine Hollow). RSV is controlled exclusively by defendant-appellant/cross-appellee, Robert S. Vukelic (Vukelic). Vukelic, through RSV, purchased the facility in 1994 and commenced operations. The facility is not a solid waste landfill and is only authorized to accept construction and demolition debris materials. Construction and demolition debris materials are "those materials resulting from the alteration, construction, destruction, rehabilitation, or repair of any manmade physical structure, including, without limitation, houses, buildings, industrial or commercial facilities, or roadways." R.C.3714.01(C). Examples of such materials include bricks, wood, shingles, drywall, etc., which are generated as the result of construction or demolition activities.
 {¶ 3} In 1990, the Ohio General Assembly passed R.C. Chapter 3714, comprehensive legislation designed to regulate construction and demolition debris facilities. On September 30, 1996, the Ohio Environmental Protection Agency adopted construction and demolition debris (CDD) regulations. Ohio Adm. Code 3745-400-01
et seq. The regulations require the owners and operators of construction and demolition debris facilities to obtain operational licenses. Because Pine Hollow was an "existing facility" under the regulations at the time of their adoption, the facility was allowed to continue operating without a license until the Director of the OEPA denied the license and RSV exhausted its administrative appeals. RSV applied for a license each year from 1997 through 2001, but no license was ever issued due to its noncompliance with the regulations. However, RSV continued to operate the facility while it appealed the OEPA's proposed denial of the licenses.
 {¶ 4} Nearly from the time RSV began operations at the facility, it experienced numerous and repeated regulatory compliance problems. This appeal focuses only on two of those problems. First, RSV unlawfully accepted solid waste into its CDD landfill from November 1996 until September 2001. The second problem at the facility concerned a stream known as Rush Run. Waste deposited at the site blocked its flow. In early 1997, after repeatedly being cited for failing to divert Rush Run around the facility in accordance with CDD regulations and the Surface Water rules, RSV routed Rush Run through the facility with a culvert pipe which created a number of compliance issues. RSV was required to obtain permits before changing the course of Rush Run. Also, problems developed with the pipe and water did not flow through it properly causing water to divert into other areas of the landfill.
 {¶ 5} On March 23, 2001, the plaintiff-appellee/cross-appellant, State of Ohio, ex rel. Jim Petro, Attorney General of Ohio (the State), on behalf of the OEPA, filed an injunctive action against RSV and Vukelic. The complaint set forth 24 counts alleging numerous violations of the construction and demolition debris regulations. The complaint also sought monetary fines and corrective action to bring the facility into compliance with the regulations.
 {¶ 6} The parties attempted to resolve disputed issues and reached an agreement embodied in a consent order filed April 10, 2001.[1] RSV was ordered to abate surface water violations at the site because of concerns about the flow of a stream into the landfill. Unsatisfied with RSV's efforts to comply with the order, the State filed charges in contempt in February 2002.
 {¶ 7} On April 10, 2002, the trial court again ordered RSV to remedy the surface water violations at the facility and imposed a civil penalty of $10,000. Both orders set forth stipulated penalties should RSV fail to comply with the terms of the agreements.
 {¶ 8} Still unsatisfied with RSV's efforts to comply with the terms of the two consent orders, the State filed a second motion for contempt on August 1, 2002. On September 17, 2002, the trial court combined the bench trial and contempt hearing and heard the case.
 {¶ 9} On November 13, 2002, the trial court issued a ruling of liability and then a final order on December 12, 2002. The trial court found RSV in violation of thirteen counts of Ohio's environmental laws and two counts of contempt. The court also awarded the State a monetary penalty of $413,225. Both parties appealed.
 {¶ 10} RSV's first assignment of error states:
 {¶ 11} "The trial court erred in imposing a penalty against Defendants on Count III of the State's Charges in Contempt, when, at the conclusion of the liability phase, the trial court had found `substantial efforts' on the part of the Defendants to comply with this agreement and therefore not in contempt for failing to complete the channel."
 {¶ 12} RSV argues that the trial court's decision with regard to the surface water diversion plan (i.e., Rush Run) was inconsistent with its factual findings. It appears that RSV's argument contains some merit. Additionally, the State does not really dispute that the trial court's decision and findings are inconsistent in this respect.
 {¶ 13} Both Counts II and III of the State's Second Motion for Contempt relate to the building of a diversion channel on the west side of the facility. Count II related to the construction of an open trapezoidal channel on the southwest portion of the landfill. Count III related to the installation of a storm sewer pipe on the northwest portion of the landfill. It is undisputed that these were not considered separate and distinct diversion channels.
 {¶ 14} The trial court did not find RSV liable under Count II in connection with construction of the open channel, concluding that RSV had performed "substantial efforts" to comply with the agreed judgment entry. The trial court specifically noted that RSV had made substantial efforts in attempting to remove large quantities of rock, and that these efforts were hampered by a gas line and the State's concerns about that gas line.
 {¶ 15} The trial court then found RSV liable under Count III of the State's Second Motion for Contempt, finding that RSV's failure to install the storm pipe was "without showing good cause." The pipe portion of the diversion channel, which is the area relevant to Count III of the contempt motion, is the area where the rock needed to be removed before installing the pipe. The trial court acknowledged that RSV had made "substantial efforts" in attempting to remove the rock, and that these efforts, coupled with unforeseen circumstances, justified RSV's failure to meet the deadline set forth in the agreed judgment entry. Count II, on the other hand, related to the construction of an open channel which did not require the removal of any rock, as was needed to install the pipe. The area covered by Count II was relatively flat and, therefore, RSV installed this portion of the diversion channel using standard construction methods and equipment. There was no difficulty building the open channel because it only involved cutting a ditch deep enough to tie into the end of the storm pipe. The trial court's acknowledgment of RSV's substantial efforts with regard to the removal of the rock, and that these efforts were sufficient to warrant a finding that RSV was not in contempt, illustrates an inconsistency within the court's own findings.
 {¶ 16} The State simply argues that even if the court's findings in this regard are construed as inconsistent, there were enough other violations proven to justify the ultimate finding of contempt.
 {¶ 17} Given the specificity of the State's complaint and the counts contained therein, and the specificity of the trial courts imposition of civil penalties regarding these counts, this portion of the trial court's findings is reversed.
 {¶ 18} Accordingly, RSV's first assignment of error has merit.
 {¶ 19} RSV's second assignment of error states:
 {¶ 20} "The trial court erred in imposing `per day' penalties against Defendants on Count III of the State's Charges in Contempt after August 31, 2002, the undisputed date when Defendant's Certifying Engineer certified the completion of 560 feet of the storm pipe, the distance ordered by the Court to be installed."
 {¶ 21} RSV's second assignment of error is rendered moot by our resolution of RSV's first assignment of error.
 {¶ 22} RSV's third assignment of error states:
 {¶ 23} "The trial court erred in assessing a penalty against Defendants for a violation of ORC3734.03 when the penalty statute, ORC3734.99 requires the State to prove defendants acted `recklessly,' and no evidence of reckless conduct was ever entered into the record."
 {¶ 24} Count I of the State's Amended Complaint alleged that RSV "caused, permitted and/or allowed solid waste to be disposed of on the ground at the facility in such a manner that constitutes open dumping" in violation of R.C. 3734.03. At the conclusion of the liability phase, the trial court found that RSV "accepted solid wastes and permitted open dumping from November 22, 1996 continuously through September 21, 2001" and, therefore, was subject to a fine of not more then $10,000 per day. The trial court then assessed a fine of $5.00 per day, in the total amount of $10,910.00.
 {¶ 25} RSV points out that under R.C. 3734.99, fines can be imposed against whoever recklessly violates any section of that chapter. RSV argues that the State did not present any evidence of reckless conduct on the part of RSV in accepting solid waste.
 {¶ 26} As the State correctly explains, RSV's argument is flawed because the trial court assessed civil penalties for violations of R.C. 3734.03 in accordance with R.C. 3734.13(C), the appropriate statute for assessing civil penalties. R.C.3734.03(C) states that "the court may impose upon the person acivil penalty of not more than ten thousand dollars for each day of each violation." (Emphasis added.) R.C. 3734.99, referred to by RSV, is a criminal statute. The State did not pursue its case under that statute. The State pursued its case under R.C. Chapter 3734 which imposes strict civil liability for anyone who violates it. Therefore, all the State had to do was prove the violations in order for a civil penalty to be imposed.
 {¶ 27} Accordingly, RSV's third assignment of error is without merit.
 {¶ 28} RSV's fourth assignment of error states:
 {¶ 29} "The trial court applied an erroneous `continuing violation' standard in assessing the `per day' penalties for the illegal disposal of solid waste in Defendant's landfill."
 {¶ 30} RSV argues that the trial court erred by applying a "continuing violation" standard in assessing civil penalties for Counts One and Eight of the State's complaint.
 {¶ 31} Again, as the State correctly points out, RSV's argument is not supported by caselaw and is contrary to the civil penalty language of R.C. Chapters 3734 and 3714. In this case, the trial court correctly assessed civil penalties in accordance with R.C. 3734.13(C) for violations of R.C. 3734.03 as established in Count One of the State's Complaint. Upon finding RSV liable for Count Eight of the State's Complaint, the trial court assessed civil penalties under the applicable statute, R.C.3714.11(B), for violations of the CDD regulations. R.C.3734.13(C) and R.C. 3714.11(B) state that a court may impose upon a person a civil penalty of not more than $10,000 for each day
of each violation. The statutes and caselaw relied upon by RSV deal exclusively with criminal law and are not relevant to the proceedings herein.
 {¶ 32} Accordingly, RSV's fourth assignment of error is without merit.
 {¶ 33} The State's sole assignment of error states:
 {¶ 34} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE STATE BY FAILING TO ORDER INJUNCTIVE RELIEF IN ITS DECEMBER 12, 2003 FINAL ORDER UPON FINDING VIOLATIONS OF OHIO'S ENVIRONMENTAL LAWS"
 {¶ 35} The trial court found RSV liable for failure to submit surface water and groundwater monitoring plans in accordance with Ohio Adm. Code 3745-4001-1(B)(13) and 3745-400-11(Q)(5). Also, the trial court found RSV liable for unlawful open dumping (i.e., accepting solid waste). The State takes issue with the trial court's failure to issue injunctive relief to remedy these violations.
 {¶ 36} The State argues that these are strict liability statutes and that the trial court was required to issue injunctive relief. Specifically, the State refers to R.C. 3734.10
and R.C. 3714.11(A) which state that a court "shall grant preliminary injunctive relief upon a showing that the person against whom the action is brought has violated, is violating, or is threatening to violate any section of this chapter [or] rules adopted thereunder."
 {¶ 37} The law does provide for the State to receive injunctive relief. However, the law does not require the trial court to grant every type of relief that the State requests. The court should grant the relief which is reasonable under the circumstances. See State v. Alexander Bros., Inc. (1974),43 Ohio App.2d 154, 72 O.O.2d 362, 334 N.E.2d 492. In this case, RSV has already been subjected to multiple injunctive relief orders and fines. The State simply disagrees with the extent of the relief imposed by the trial court.
 {¶ 38} More specifically, the State argues that the trial court failed to order the proper disposal of solid waste deposited at RSV's site and failed to order RSV to submit a groundwater and surface water monitoring plan for the facility. Regarding the disposal of solid waste, RSV ceased accepting waste materials on September 21, 2001, and proceeded to cap the landfill in accordance with closure regulations. Concerning the surface water monitoring plan, the trial court ordered injunctive relief requiring RSV to construct a new surface water diversion system. The court also found that related problems have been contained, managed, disposed, or maintained.
 {¶ 39} In sum, the court granted injunctive relief which was reasonable under the circumstances in this case. The facility has been enjoined from receiving any more waste, of any form. The facility has been "capped," which means the facility is permanently closed and incapable of receiving any more waste. RSV was also enjoined to construct the surface water diversion system already discussed and has been enjoined to take numerous other actions to address violations which were not the subject of this appeal.
 {¶ 40} Accordingly, the State's sole assignment of error is without merit.
 {¶ 41} The judgment of the trial court is hereby reversed in part and affirmed in part. In accordance with our finding merit to RSV's first assignment of error, it is sustained, and the trial court's findings with respect to Count III of the State's Second Motion for Contempt and the attendant fines are reversed and vacated. RSV's second assignment of error is rendered moot, and its third and fourth assignments of error are overruled. The State's sole assignment of error is overruled. The remainder of the trial court's decision is affirmed.
Vukovich, J., concurs.
Waite, J., concurs.
[1] "CONSENT ORDER FOR PRELIMINARY INJUNCTION AS TO DEFENDANTS ROBERT S. VUKELIC AND RSV, INC."